Summer 2016, 3209. Sbeih A Sbeih v. United States of America are going to have to exceed 15 minutes per side. Ms. Petinelli. Good morning. May it please the court, I'd like to reserve five minutes for rebuttal. Farewell. Joan Petinelli on behalf of claimant appellant Sbeih Sbeih. This case should trouble the court. The government seized in the district court ordered the forfeiture of over $900,000 in assets, personal and business assets, of a United States citizen residing in Jerusalem. It did so all without any evidence that his failure to re-enter the United States after he was indicted was in order to avoid prosecution. And it did so without any evidence that the property was subject to forfeiture. In the process in this case, the district court applied the wrong legal standard of intent under the Fugitive Disentitlement Statute and shifted the burden of proof to Mr. Sbeih, the claimant, to prove the disentitlement issue, that his failure to re-enter the United States was not in order to avoid prosecution. Finally, it violated his right to due process to a hearing on the merits of his claims. And that is because the government in this case initiated the proceedings as a claimant in a forfeiture, civil forfeiture action, the defendant is placed in a position of a defendant there to defend the interests in his property. Let me ask you this, after the government establishes that your client had been notified that he had been indicted and required to appear and that your client was not under any physical or legal disability that prevented him from traveling and was available to come back, why wasn't that a sufficient showing and satisfaction of the burden under the statute? What then is the justification for your client not coming? I understand he claims he might lose his permanent residency, but that just seems to suggest that he intends to stay where he is perhaps indefinitely because he's been over there since 2008 and he wasn't living and all that and he wasn't indicted until 2013. Actually, I believe it was 2014, Your Honor, but I hear what the court is asking and the problem here is that mere notice or knowledge of an indictment and failure to return is insufficient to meet the government's burden of proof in this case and the government has acknowledged its burden of proof to prove not only the notice or knowledge of the process under which there was a warrant or for his apprehension, but also that there was a failure to return. And more than that, I'm sorry, Your Honor? Finish your answer. But more than that is that it's the government's burden to establish that there's an intent to avoid prosecution, which it did not do here. What Mr. Sebae submitted was the purpose for his remaining in Jerusalem was to protect his residency there. You're correct in that he had been living in Jerusalem since 2008, had only returned to the United States for a very brief period of time in 2011, all prior to indictment. So what the government hasn't shown here is that his remaining in Jerusalem is in order to avoid prosecution. However, your client did not provide any irrefutable documentary evidence that his residency would be jeopardized if he were to come back and then even if, other than his speculative concern, and even if he did, why should we care in any event? Why would that be a sufficient reason for him? He's an American citizen. He can live here. Why would we even care that he wants to live someplace else? Well, there's two parts to that question. I know it's bad to ask compound questions, but out of deference to my colleagues, and I know they've got a bunch of questions all piled up that they're waiting to provide you with, so I thought I'd get those both in at the same time. The first part of the question is we did indeed submit evidence that should he return to the United States at the time, shortly prior. Wasn't that just his lawyer's affidavit? There's nothing authoritative from the Israeli government. We don't have anything authoritative. There was nothing directly from the Israeli government. However, my understanding, based upon the the affidavit of Professor Gabay, as well as the affidavit of his attorney, Mr. Hassan, was that the residency proceedings had been initiated in 2008. There was some indication at that point in time that should he remain under the and provide a center of life for two years, that he would be able to retain his residency there. He apparently did. This is just stuff from his lawyer. We don't have anything really from the government at all. And what the attorney has said, who has been representing him throughout all these proceedings since 2009, was that if he were to leave, he would not be able to re-enter because at that point, Your Honor, the case was on appeal. I believe that Mr. Sabay had lost the original case. He had appealed to the Court of Appeals and at that point in time, he has been fighting at that point to appealing an adverse decision that his residency was revoked. So I think that... The 2011 permission that he received from the Israeli Ministry that he could go to America for four months without losing his residency status, is there a document in the record that reflects that decision? I don't think that there's a document in the record that the government submitted that would show that. It was based upon Professor Gabay's review of the records in his proceedings with the Ministry of the Interior. So I don't believe there's an actual document that was shown to submit it into evidence in the court below. I don't know that you'll embrace the view of the case I'm about to throw out, but I think it's very defensible to view this case as a real failure of proof and failure of proof on the part of the government and you know, if we're to get to you, probably failure of proof on your part is . . . I don't know if you represented him in the trial court, but your possibly comes down to an issue of who has the burden of proof. The way I read the record, and you know, the government has it in this context, the way I read the record, the district court was making its decision based on a whole lot of stuff that isn't in the record. He had all of these chambers conferences which aren't even . . . wouldn't constitute evidence, but would constitute lawyer statements at any event, but we don't even have a record of those because there was not a court reporter present. And for your part, to the extent you presented evidence, I mean, there was nobody to verify the records or anything of that sort. It was somebody . . . the professor you referred to was, as I understand it, your effort to offer an expert to comment on the import of proceedings. And so, I mean, we really . . . the whole case looks to me like that one that could be viewed simply as, who knows, because there's no evidentiary record to review the adequacy of the district court's determination. I would agree absolutely with that, Judge Gibbons, and the problem here is that the district court did rely on, and it's clear from his opinion, that he did rely on in-chambers statements of counsel where there's no record. He also, essentially, in his decision, made the statement that Sabe has presented no proof regarding the status of the proceedings in Israel and shifted the burden of him to prove why he wasn't able to return to the United States. So that's the first failure. Let me ask you, isn't it things that the judge relied upon that might not be on the record? Aren't those, for the most part, things that are not contested between the parties, such as the fact that your client doesn't return, he's aware of the proceedings, he knows of the indictment, he's . . . Those are all certainly . . . those were certainly undisputed facts. What is disputed is his intent here, and the government offered no evidence to demonstrate that his intent in failure . . . in failing to return was due to avoid prosecution, which this court has already said the government must prove is the reason for the failure to return. The problem is that we have case law that, fairly read, seems to teach that you cannot infer an intent not . . . an intent to avoid prosecution from absence. Correct, and I think this circuit followed the D.C. Circuit's opinion in United States versus about $6.9 million. There, the claimant was residing outside of the United States, did not return after notice and knowledge of charges, but did not, for any reason, for his failure to return. And the court there said it's not enough that the government shows notice and failure to return, and that the government didn't show any evidence of any intent on his part, that his failure to return was in order to avoid prosecution. I see that my time is up, and unless the court would like . . . Yeah, let me ask you now, if the only issue here is his wanting to maintain residency, even if he could show that, what difference does it make? In other words, in a foreign country, even if he could show, even if he could show that his subject . . . that's his subjective desire, if somehow there was some evidence that, on one side, your side, or the government's side, going to that issue, why should that be an adequate reason, in any event, for him not to come back to answer this indictment? Your Honor, I think the problem is that any legitimate reason should be sufficient reason. And I think that what the court is getting at is back to the burden shifting analysis. Well, it can't be any reason. Maybe he doesn't want to leave because Israel is the only place he can get his favorite ice cream. I mean, it can't be any reason. If he had a . . . if he was under some kind of health problem, or he had a dying child over there, or he couldn't travel for a medical reason, or something, I mean . . . And I understand that, Your Honor. In this case, I think it is a compelling and sufficient justification for his failure to return, not that he has the burden . . . Unless he intends to live over there for the rest of his life. He's been over there since 2008, and he's an American citizen. It would seem he'd want to address a serious legal problem he's being called to account for over here. Yes, Your Honor, and I would agree that his intent was but for the residency issue. I think that would have been the case. All right. Okay. Thank you. Thank you. Hey, please, court. Good morning. My name is Philip Trippi. I am an Assistant U.S. Attorney with the Northern District of Ohio Office of the United States Attorney, and I was counsel for the government, both on the district court level, and obviously here today. Your Honors, I believe that the Sebae's argument on appeal, as conveyed in his brief, is premised on the misreading of the United States v. Salte. The counsel, clearly the counsel in the district court level, and counsel here, continue to suggest that Salte stands for the proposition that the refusal to submit themselves to criminal jurisdiction of the court has to be the sole or predominant reason. Well, here, let's put aside sole for a minute. Do you contend that the case law permits an inference of intent to avoid prosecution from absence from the country? Your Honor, I know that Colossos, at page 204 to 205, made that point that deliberate absence from the country does give rise to a presumption. Colossos was a Second Circuit case that we suggest. Well, I mean, what about complete absence, where you have nothing from which to infer whether the absence is deliberate or not? Can you point to case law that supports you on that point? Your Honors, I mean, this record is devoid of any evidence, as opposed to statements, on your part, correct? In the original motion to strike, we did raise the concern, and it went undisputed at the various status calls conducted by the judge in the district court level, that Mr. Sabay, through his original counsel, had expressed concern about coming back to the United States to face criminal jurisdiction because he was concerned that a conviction would . . . It was merely an assertion by you as counsel for the United States. It was first represented as an assertion by us in the original motion to strike, but it was also the subject of repeated discussions before the judge, so the judge was aware. Is there a record? Your Honors, unfortunately, there is no clear record that we can point to other than this was . . . You don't even have before us what representations were made, and if it's all counsel's representations, last time I knew, that wasn't evidence. You don't know of any way that your assertions to the court can be evidence, do you? Your Honor, I know that once we show that he is deliberately not coming back to the United States . . . Through evidence, right? It was undisputed, Your Honor, that he was choosing not to come back to the United States. How did you reflect that? The counsel, the fact that you all don't disagree on a point does not establish it to be evidence. If you're going to create evidence through that, you've got to either stipulate or at least there have got to be formal pleadings in which an is not the case. My concern is that the way you're wording the test avoids the nature of the salty test. It doesn't say deliberately away from America. It says deliberately avoided prosecution, and so that's your burden as the government to show, and I'm concerned about the thinness of this record also, because I don't understand how statements of counsel that are not even in a record before us could be used to show that you have met deliberately avoided prosecution. What is your best evidence in the record that the actions of Mr. Sebae were for deliberately avoiding prosecution? I would contend that the best evidence that's available to the court, other than Judge Nugent's actual representations within his own opinion, would be the fact that the issue was raised in writing, it was not responded to, other than, again, it was acknowledged repeatedly that by counsel that they were basing their reason for not coming back to the United States solely upon their reading of salty, that we had to prove somehow that it was the sole reason. Well, let's put aside their reading of salty because we don't, I think as Judge Gibbons has said, the issue is not, the issue doesn't reside in their interpretation of it being a sole or a predominant or a substantial. The question is, you have the burden of proof to show that the purpose that this individual deliberately avoided prosecution, that that was the intent, and I'm not finding anything in the record that gives you that support you need. We do have a verified claim by the claimants here to the property, but that does not aid you in your duty to comport with the responsibility to show by a preponderance of the evidence that he was deliberately avoiding prosecution. Is there any, I don't, I'm not convinced that the judge's statements in an opinion about what was represented by various counsel constitute evidence in any way. So what's left? Your Honor, a starting point for any of these cases is the concept that is a person fully aware of the warrant. Obviously Mr. Sebae was. He was fully represented by counsel of his choice. Mr. and Mrs. Sebae were completely aware. The court drew an inference from the fact that given the opportunity, Mrs. Sebae traveled from the very same location so that she could persist in proceeding with her claim. My response to that is that she does not stand as the familial entity that is seeking to remain in Israel. She apparently did not, if the court's asking did she have the same alleged impediment that Mr. Sebae had, I don't believe she did. But the fact that she was able to freely travel, that the court also took into consideration that given the past... She was not indicted. She was not indicted. He was. He was. Your responsibility, your burden of proof relates to him. Right, but the court's asking is there any evidence from which the judge could draw an inference and I think the judge did draw an inference from the fact that she came back to the United States as showing that there was no impediment to him physically traveling to the United States. In fact, his wife had done so, so that she could persist in presenting her claim to the United States. What's your best case that a physical impediment is the test as opposed to your responsibility to prove that he, step five in SALT, he deliberately avoided prosecution? Well, Your Honor, if you remain outside of the country, it has the effect of avoiding the prosecution. I mean, the starting point of all of this... The question is really whether that's the test and I mean, but I want to say something. I don't want to sound nasty when I say this, so my choice of words may convey some things I'm not feeling about this. But you know, one of the ... I was a district judge for a very long time and I don't think that affects how I see appellate proceedings very often, but one way it does affect me is that I get irritated at choppy, at sloppy, excuse me, sloppy, and you know, it's sloppy not to make a record. It's sloppy, frankly, I mean, I don't know who has . . . we will not go to the issue of whether you ought to be having conferences that aren't on the record. But I would think you might have suggested . . . I mean, you have an obligation as well as the judge, but you know, it's incumbent on you to think about how is this really in the record and so what if I convince the district court in a chamber's conference that he ought to do what he did? What's that going to mean for my protecting my result on appeal? I mean, you just . . . a lawyer needs to think about these things. And so I don't mean that to sound harsh or mean. I'm not mad at you or anything. I'm just making an observation. I understand, Your Honor, and you know, having been in the fray for so long, I can tell you the argument was solely a disagreement back and forth between counsel as to whether a desire to preclude a prohibition from going back to the country of Israel should excuse a person's obligation to submit to the jurisdiction of the court. And it was our position throughout that he had an obligation to come back. Our starting point always was, where's the body? You know, at some point, it's incumbent upon them to give the explanation. They did not return. The warrant was out there from June 25th of 2014. The court didn't rule until much later about this. He had an obligation. He was represented by counsel and during that entire time, he never came back. He never gave an explanation. I wonder if that argument is at odds with other case law about, a case law that says, for example, using Judge Clay's suggestions, you have a very sick child, you yourself have had surgery and are recovering. There are other reasons that case law has accepted as reasons not sufficient to show that there was an intent to stay away from America because of the prosecution. So it's not ‑‑ so that's what you have to show. If those reasons are adequate, the question is, have you placed something under your burden of proof in the record that would show that his statement that since 2008, I have been working to maintain my right under the law of Israel to be one of the few recognized Arabs who may live in Israel, I do not want to give up that slim and small group and my right to remain there. Is that enough to show that the reason he did not come back is not the intent to avoid prosecution? And that's your burden. I understand where the court is coming from. However, our position throughout was that everyone is misreading Salty. Even in Salty, where the person had a major heart attack in an operation and had a much more concrete reason for not being able to travel to the United States, being under some sort of impediment to physically traveling back to the United States, even the Salty court clearly held at the end of the opinion that we are in no way suggesting that the district court is without the ability to still disentitle this fugitive. Certainly. However ‑‑ The record was with adequate evidence, correct? Yes. On a made record supported by adequate evidence. Well, that can be assumed in there, but I am saying that it was clear that you can make an inference, I believe you can make an inference by the mere passage of time and the fact that he was able to send his ‑‑ Do you think that's what Salty stands for, an inference can be drawn from absence?  Well, the Salty court was critical of the district judge in that case, who was a different district judge, because they felt that he hadn't taken into consideration adequately the argument that there was a medical necessity. That's not what I ask you. The message of Salty, you believe, is that intent to avoid prosecution can be inferred from absence? I don't know that, I don't believe Salty stands for that. What other case stands for that, because that's what I think you're arguing. Well, I have a somewhat different argument in that I am conveying to the court that in this particular case we did raise the concern ‑‑ What about if I'm right, that that's your argument? Where did we find the support for it? Or is it your position that there is no support for that in case law? It's simply my position that the court was within its rights to exercise its discretion in this case. The court was aware that he was not showing up. I've asked you a question about appellate case law. I gather that you are unable to find such a case to cite to us. Your Honor, there are cases out there that stand for the proposition that you can infer. There are cases that do say you can infer what the intent was based upon failure to answer discovery, based upon ‑‑ Failure to appear alone. I do not believe I can cite any case where failure to appear alone would support a full inference. I would again ask the court to consider the fact that in this particular case the issue had been squarely placed before the court in the original motion to strike and counsel had no answer for that because in fact that did represent what occurred, that meetings had occurred between government counsel and Mr. Sebae, his counsel, regarding their concern that any criminal conviction in the United States would preclude him from easily going back to Israel, which is actually slightly different than the concern he was later raising. But we put that on the record by way of raising it in our motion and then we got nothing back from them because there was nothing to come back to other than the fact that that was exactly what had occurred, that there had been a concern. And there are cases that say that you can infer from a person's concern about the ramifications I believe you answered my question a long time ago. Your light has been on for a while, so I think we have your argument in hand. My apologies, Your Honor. Are there any other questions I can answer for the court? Apparently not, but thank you. Thank you. Any rebuttal? Very briefly, Your Honor. Judge Gibbons, I think there is case law that rejects the proposition that you can make an inference simply from the absence of the claimant and the failure to return. And that case is the D.C. Circuit case from 2009, U.S. v. 6.97 million. I think that case makes clear that reasonable inferences are to be drawn in favor of the claimant, not in favor of the government that mere failure to return gives rise to an inference that it's for the purpose of avoiding prosecution. What about the claim that certain things were undisputed because you didn't refute them? I think that, first of all, there's a couple of points I'd like to make with respect to that, Your Honor. The court's absolutely correct in that there is no record of any discussions. In this case, I was not counsel until later in the proceedings for Mr. Sebae. I think there was an allegation or an argument that government's counsel submitted in its own motion to strike that they were in contact with counsel for Mr. Sebae prior to an indictment and that there was a pre-indictment in April 29, 2014 meeting, and I believe the government says at which the potential of a resolution of the case by a plea agreement was discussed. And that it was clearly communicated to counsel by the government's counsel that any resolution of the civil forfeiture case would require resolution of both cases. Now I don't think that, first of all, there's nothing in the record that would support that. There's also nothing in the record that would support what Mr. Trippi's now saying, which wasn't even argued in his brief, is that in those discussions there was a concern raised that a criminal conviction might prohibit him from ever returning to Jerusalem. I simply don't follow that argument because... The issue was not that what would happen here, as far as I understood it, the issue was that if he leaves, he may not return to Israel. That's Israel's rule. That was certainly always the position that we've taken in this case, and when I say we, I'm saying including prior counsel in response to the initial motion to strike. So I think it was made clear at that point that his problem in returning was simply due to his legal action with the Israeli Ministry of the Interior, who had revoked his residency and he was fighting to retain it. The other thing that's different in this case from cases like Technodyne and Colossos is that there's absolutely no evidence in the record here that Mr. Sabay is somehow attempting to obtain concessions for the government in exchange for his return from Jerusalem. Let me ask you this. The burden is on the government. If your client doesn't have any clear statement or documentary evidence from the Israeli government to say that if he leaves he might not be permitted to come back, what is it that the United States government should have done or could have done to have confirmed the truth of your client's contention that if he left he might not be able to return? I think, Your Honor, that because it's the government's burden, the government either has the burden to prove through other means, through other actions or statements of the prosecution. That could be any number of things. For example, there were in other cases . . . My question is a little bit narrower than that. What could the government have done, if anything, to determine that if he left Israel he couldn't return, since your client could not provide that evidence and maybe the evidence is simply not available. What could the government have done? I think, Your Honor, we did provide that evidence through his attorney's opinion. All that was was the attorney's affidavit, which has to be discounted to a certain extent. He didn't provide anything definitive from the Israeli government. No, he didn't, nor did the government. Obviously the government potentially could have done that, could have confirmed . . . That's what I'm asking. How could they have done that? Maybe it's some low-level bureaucrat who might make a decision or might not make a decision. Maybe that would be a matter of speculation. What could the United States government have done in that regard? Your Honor, I'm not sure what the government could have done in terms of getting information, but I think the best source of information about that comes from his attorney because his attorney had been representing him since 2008. His attorney is the one who had secured for him permission to return in 2011 for a brief period of time. It was his attorney who was then representing him in the appellate process in Israel. It is his attorney who then stated in a sworn affidavit that he would not be able to return if he left Israel during the pendency of that appeal. My belief is that is because the case had been decided against him adversely. He was therefore a litigant in the Court of Appeals there, and leaving would then have resulted in his waiver of his future right to retain that or re-achieve or re-obtain that residency permit. Has that appeal been resolved? Your Honor, I don't know any further information. Would that be a matter of public record if it had been resolved? I'm not sure, Your Honor. I'm not sure. I'm not versed in Israeli law. Thank you. All right. I think we have your argument in hand. The case is submitted.